IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| DASHAUN PETERKIN, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Civil Action No. 1:22-cv-0188-LKG<br>)<br>) Dated: November 28, 2023 |
| JEFF NINES, WARDEN,<br>BRIAN CLITES, CO II,<br>TIMOTHY MARCHINKE, CO II,<br>JUSTIN SHORT, CO II,<br>ROGER GROWDEN, CO II,<br>RICHARD MAWHINNEY, CO II,<br>JENNIFER ROBERTSON, CO II,<br>GREGORY SHAFFER, COII,[1] | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | )<br>) |

## MEMORANDUM OPINION

Self-represented plaintiff Dashaun Peterkin, a state inmate currently confined at North Branch Correctional Institution ("NBCI"), filed this amended civil rights complaint pursuant to 42 U.S.C. § 1983, against Warden Jeff Nines and Correctional Officers Brian Clites, Timothy Marchinke, Justin Short, Roger Growden, Richard Mawhinney, Gregory Shaffer, and Jennifer Robertson. ECF No. 1. Peterkin seeks monetary damages for an incident that occurred on April 10, 2021, when he was in an altercation with the correctional officers named as Defendants. *Id.*

In response to the Amended Complaint, Defendants filed a Motion to Dismiss or, in the Alternative, for Summary Judgment. ECF No. 23. Peterkin was advised of his right to file an opposition response to Defendants' motion and of the consequences for failing to do so. ECF

---

[1] Gregory Shaffer is not listed on the docket, however, the Amended Complaint named Shaffer as a Defendant and the dispositive Motion is filed on their behalf. The Clerk shall be directed to add Gregory Shaffer, CO II as a Defendant.

No. 24. Peterkin sought and was granted extensions of time to file his opposition response (ECF Nos. 25, 26, 28, and 29) but has failed to file anything further. The Court has reviewed the pleadings and finds a hearing unnecessary. *See* Loc. R. 105.6 (D. Md. 2023). For the reasons stated below, Defendants' motion shall be **GRANTED**.

I. **Background**

Peterkin claims that on April 10, 2021, he got into an altercation with a correctional officer after he had filed several complaints regarding his safety. ECF No. 1 at 7. Peterkin states that he "was assaulted by multiple correctional officer[s] while [he] was restrained on the ground. . . ." *Id.* He alleges that Officer Clites struck him in his face and upper torso several times and also kicked him in his face while he was on the ground restrained. *Id.* Officer Marchinke tackled Peterkin to the ground and struck him in his ribs and back. *Id.* Officer Shaffer struck Peterkin in the face several times while he was restrained by other officers. *Id.* Peterkin states that Officers Short and Growden held him down while he was assaulted by Officer Mawhinney and Officer Robertson held him down while he was assaulted by the other officers. Lastly, he claims he was placed in a holding cell at the request of Warden Nines where he was held for 15 days without running water or the use of a toilet. *Id.*

Defendants provide a video of the altercation (ECF No. 23-3, filed separately) and aver that Peterkin reviewed the video on May 19, 2023. ECF No. 23-4 at ¶ 3. The video demonstrates that on April 10, 2021, several inmates were in an enclosed recreation yard when five correctional officers came out of the building and walked over to the yard. ECF No. 23-3 at 12:48:50. One correctional officer opened the gate to the yard; three inmates exited the yard before Peterkin and moved toward the building. Peterkin exited the gate and then suddenly and without provocation stepped quickly toward the correctional officer who had opened the gate and

punched him in the face with such force that the officer flew backward, off his feet, and fell to the ground. *Id.* at 12:49:12. The attack appears unprovoked as the officer was standing still and had not moved in any way toward Peterkin. After Peterkin's attack on the officer, the other officers overseeing the inmates' return from recreation responded and attempted to subdue and restrain Peterkin. As the officers quickly approached, Peterkin continued to throw punches and appears to resist the officers' attempts to restrain him. Ultimately, Peterkin was taken to the ground, placed in restraints, and removed from the scene. *Id.* at 12:49:23. While the officers subdued Peterkin, the three inmates who exited the yard before him, dropped to the ground in a prone position with their hands over their heads. The inmates in the recreation yard remained in the yard while an officer held the gate closed. The video does not show any officer hitting Peterkin once he was restrained. ECF No. 23-3. Peterkin was restrained and carried off the lawn toward the building by four officers. *Id.* at 12:50:37.

After Peterkin's assault on Officer Shaffer, he was moved to administrative segregation pending an adjustment proceeding (ECF No. 23-7); Lt. Speir recommended that Peterkin be placed on staff alert because he presented a "substantial security threat to the institution, staff or other inmates." ECF No. 23-6 at 1. The request was approved. *Id.* The following day, Peterkin's placement on staff alert was reviewed and continued when Lt. Speir advised the acting security chief that Peterkin stated he would continue to assault staff until he was removed from "the list." *Id.*, at 2. As such, Peterkin was continued on staff alert. *Id.* Peterkin's continuation on staff alert was reviewed on April 16, 2021, and due to his poor behavior he was again continued on staff alert. *Id.* at 3. The staff alert designation was removed on April 20, 2021, after Peterkin showed his compliance with staff. *Id.* at 4.

3

During Peterkin's confinement to administrative segregation he was offered showers and out of cell time which he regularly refused. ECF 23-8 at 1. He was provided soap and toilet paper. *Id.* at 2. He also declined x-rays. *Id.* Maintenance records for the housing unit where Peterkin was confined during the relevant time show that on April 21, 2021, a report was lodged that the sink in Peterkin's cell did not have hot water. ECF No. 23-9 at 24. No other maintenance reports were received regarding Peterkin's cell during the time he was assigned to administrative segregation. ECF No. 23-9.

**II.   Standard of Review**

In reviewing the amended complaint in light of a Motion to Dismiss pursuant to Fed. R. Civ. Proc. 12(b)(6) the Court accepts all well-pleaded allegations of the complaint as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff. *Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)); *Ibarra v. United States,* 120 F.3d 472, 473 (4th Cir. 1997). Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Migdal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002) (stating that a complaint need only satisfy the "simplified pleading standard" of Rule 8(a)).

The Supreme Court of the United States explained a "plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). Nonetheless, the complaint does not need "detailed factual allegations" to survive a motion to dismiss. *Id.* at 555. Instead, "once a claim has been

4

stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 563.  To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not 'show[n]' -- 'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

Pursuant to Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The Court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002).  Importantly, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

While self-represented pleadings are liberally construed, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007), this Court maintains an "affirmative obligation . . . to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 323-24 (1986)). "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of his pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting Fed. R. Civ. P. 56(e)). A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Anderson*, 477 U.S. at 249-50.

### III. Analysis

Defendants assert the amount of force used was not excessive; the conditions of Peterkin's confinement following the altercation did not violate Peterkin's Eighth Amendment rights; and Peterkin fails to state a claim under the Thirteenth Amendment. ECF No. 13.

#### A. Excessive Force

Whether force used by prison officials was excessive is determined by inquiring if "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U. S. 1, 6-7 (1992). This Court must look at the need for application of force; the relationship between that need and the amount of force applied; the extent of the injury inflicted; the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials; and any efforts made to temper the severity of the response. *Whitley v. Albers*, 475 U.S. 312, 321 (1986). The absence of significant injury alone is not dispositive of a claim of excessive force. *Wilkins v. Gaddy*, 559 U.S. 34 (2010). The extent of injury incurred is one factor indicative of whether the force used was necessary in a particular situation, but if force is applied maliciously and sadistically, liability is not avoided simply because the prisoner had the good fortune to escape serious harm. *Id.* at 38.

Here, the record reflects that Peterkin spontaneously assaulted a correctional officer with such force that he knocked the officer off their feet. He continued the assault on the first officer and on other officers as they arrived to quell the violence. While the assault was ongoing, several inmates were loose on the compound and in an unsecure recreation area. The inmates outnumbered the guards creating an additional risk of harm. Contrary to Peterkin's allegations, once he was restrained all officers stopped their use of force against him. It is clear from the video evidence that the responding officers used force in order to gain control of the situation, protect the first officer who had been attacked by Peterkin, and reestablish security over the inmates who were out for recreation. In sum, it appears that the force used by the officers was applied in a good faith effort to maintain and restore discipline and to protect both staff and other inmates. The Eighth Amendment claim therefore fails and Defendants are entitled to summary judgment on this claim.

### D.   Conditions of Confinement

Conditions of confinement that "involve wanton and unnecessary infliction of pain," or which "deprive inmates of the minimal civilized measure of life's necessities," may amount to cruel and unusual punishment. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). However, conditions that are merely restrictive or even harsh "are part of the penalty that criminal offenders pay for their offenses against society." *Id.* In order to establish the imposition of cruel and unusual punishment in conditions of confinement, a prisoner must prove two elements: that "the deprivation of [a] basic human need was *objectively* sufficiently serious, and that *subjectively* the officials act[ed] with a sufficiently culpable state of mind." *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (citation omitted).

The objective prong of a conditions of confinement claim requires the prisoner to "'produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions,' or demonstrate a substantial risk of such serious harm resulting from the prisoner's unwilling exposure to the challenged conditions." *Shakka*, 71 F.3d at 166 (quoting *Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir. 1993)); *accord De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003). Thus, "a condition of confinement that is sure or very likely to cause serious illness and needless suffering the next week or month or year" violates the Eighth Amendment, even if "the complaining inmate shows no serious current symptoms." *Helling v. McKinney*, 509 U.S. 25, 33-34 (1993).

To establish a sufficiently culpable state of mind, there must be evidence of deliberate indifference, in that a known, excessive risk of harm to the inmate's health or safety was disregarded. *See Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991) (applying the deliberate indifference standard to conditions of confinement claims); *see also Thompson v. Virginia*, 878 F.3d 89, 107 (4th Cir. 2017). "[T]he test is whether the guards know the plaintiff inmate faces a serious danger to his safety and they could avert the danger easily yet they fail to do so." *Brown v. N.C. Dep't of Corrs.*, 612 F.3d 720, 723 (4th Cir. 2010) (quoting *Case v. Ahitow*, 301 F.3d 605, 607 (7th Cir. 2002)). To survive summary judgment, plaintiff must show facts sufficient for a reasonable factfinder to conclude that (1) he was exposed to a substantial risk of serious harm and (2) the defendants knew of and disregarded that risk. *Thompson*, 878 F.3d at 107 (citing *Farmer*, 511 U.S. at 834, 837-38) (internal quotations omitted).

Here, Peterkin has not alleged facts to support a finding that he suffered or was at risk of a sufficiently serious injury as a result of the alleged conditions of his segregation cell. Nor has he established that Defendants knew of and disregarded any risk. To the contrary, the

8

uncontroverted evidence before the Court demonstrates that the water in Peterkin's cell was working: he was provided soap and toilet paper, and the only maintenance issue reported was that on one day during his assignment to administrative segregation Peterkin's sink did not have hot water. Accordingly, there is no genuine issue of material fact on Peterkin's Eighth Amendment conditions claim, and the Court will grant the Correctional Defendants' motion as to this issue.

### C. Thirteenth Amendment

Peterkin baldly claims that his rights under the Thirteenth Amendment were violated by the conduct of Defendants. The Thirteenth Amendment provides that "[n]either slavery nor involuntary servitude, except as a punishment of crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction." U.S. Const. amend. XIII. Peterkin does not offer any facts in support of this claim and as such the Court finds that his allegations do not state a plausible claim for a violation of the Thirteenth Amendment.

## IV. Conclusion

By separate Order which follows, Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment shall be **GRANTED**.

11/28/23
Date

LYDIA KAY GRIGGSBY
United States District Judge

9